## LILLIE MAXWELL v. THE STATE.

### No. 1900. Decided June 26, 1912.

**1.—Murder—Evidence—Self-Serving Declaration.**

Upon trial of murder, there was no error in refusing to admit in evidence the conversation of defendant and his codefendant with a third party the day after the killing.

**2.—Same—Charge of Court—Principal.**

Where, upon trial of murder, the evidence, which was wholly circumstantial, showed that the defendant and another acted together in the homicide, there was no error in submitting the law of principals, and the converse proposition thereof.

**3.—Same—Motion for New Trial.**

Where the motion for new trial was not supported by the testimony and the same was not available on another trial, there was no error in overruling the motion.

Appeal from the District Court of Falls. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*J. H. Anderson* and *Nat Llewellyn,* for appellant.—On question of court's refusal to admit testimony as to acts of codefendant, etc.: Dubose v. State, 10 Texas Crim. App., 348; Kunde v. State, 22 id., 65; McCorquodale v. State, 54 Texas Crim. Rep., 344, 98 S. W. Rep., 880; Skidmore v. State, 57 Texas Crim. Rep., 497, 123 S. W. Rep., 1129; Wheeler v. State, 56 Texas Crim. Rep., 547, 121 S. W. Rep., 166; Pace v. State, 61 Texas Crim. Rep., 436, 135 S. W. Rep., 379; Knight v. State, 64 Texas Crim Rep., 541, 144 S. W. Rep., 967.

On question of the court's charge on principals: Bennett v. State, 64 S. W. Rep., 254.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted under an indictment charging her with murder. When tried she was convicted of murder in the second degree, and her punishment assessed at ten years confinement in the penitentiary.

Appellant and deceased, Jim Baker, were living together as man and wife, and on the evening of the homicide went to Highbank, in Falls County. Dinah Young testified that a negro man at Highbank came to appellant and tried to get a knife from her and she refused to give it to him. The State introduced this testimony to prove a knife was in her possession. Sam Wates and others testified that at Highbank they saw John Maxwell talking to appellant, and heard him ask her to go riding with him, she replying: "No, that her

old man was in the store," when John said, "Damn that, come on
and go; if he bothers me I will kill the damned son-of-a-bitch,"
but they did not go. In a short time appellant and deceased leave
Highbank, and Willie Ann Parker says as they passed her house, she
overhearing their conversation, deceased said, "Come on, woman, you
ain't drunk." "She told him, 'No, I ain't drunk; I was just doing
that to find you out.' He says, 'Well, I have done found you out.'
So she went on down a piece further, and she says, 'I don't want
you, and God-damn you, I ain't going to have you.'" Witness tes-
tified she did not live far from Jake Harris; and Jake testified as
appellant and deceased passed his house he heard them talking, de-
ceased saying, "I have five dollars," when she replied, "I have ten,"
when he said, "'That is good, if you have got ten dollars.' She
replied to him, 'You think I am drunk.' He said to her, 'You are
trying to put a stall on me.' She said, 'That is what I am doing.'
So they goes down the road talking. I never understood anything
more they said. Shortly after that I heard a loud talking stop all
at once. In a few minutes I heard somebody come running my way,
and when he got in the yard it was that young man Jim Baker, and
he says, 'Mr. Harris, Mr. Harris.' I said, 'What is the matter?' He
said, 'Get me a doctor.' I saw he was bleeding, and he said, 'Get
me a doctor.' I went and got a chair and told him to sit down,
and he sat down, and I saw he was bleeding and was going to die.
I asked him to come down on the ground, and he came down on the
ground. I got a pan of water and dipped my hand in to wash him,
and he jumped up and holloed, 'Oh, Oh,' and goes down on the
ground. By that time up came Johnny and Lillie. Johnny comes
inside, and Lillie goes down in front of the house. Lillie says, 'That
is my husband. My name is Lillie Maxwell.' And Will says to her,
'Don't commence talking that kind of talk when you know you cut
that man.' Johnny says, 'Where is that knife?' She says, 'Here it
is.' She hands him the knife through the fence. He was kicking
then, and she said, 'That son-of-a-bitch worked me hard in Lime-
stone County last fall to help pay his fine.' She was talking about
that boy, Jim Baker." This witness is corroborated by Will Neal
and others.

Lucinda Sweeney testified that appellant on the night of the homi-
cide said, "She was into it and did not know what to do," and
asked her what to do, when she advised her to tell the truth, when
appellant replied, "Well, if I would tell them I killed that fellow
they would break my neck, or send me to Huntsville."

Appellant testified in her own behalf and said when they were
leaving Highbank deceased struck her on the side of the head and
said he had a good mind to cut her throat. That Johnnie Maxwell
ran up and he and deceased had some words, and deceased threat-
ened to kill her. That they went on down the road, and had passed
Jake Harris' house, and deceased commenced cutting at her, and

Maxwell ran up and caught him, when deceased got loose and started towards her, and she fell down, when deceased ripped her waist with a knife, and Maxwell cut him, when deceased ran, Maxwell after him and she after Maxwell.

It was shown by the testimony that when deceased and appellant left Highbank, Maxwell followed on behind them, but was not with them when they passed Willie Ann Parker's house, nor Harris' house, and he was not seen with them from the time they left Highbank until they all came back to Harris' house.

The court did not err in failing to charge on manslaughter. The lick she says deceased struck her, and relied on to raise the issue of manslaughter, is not shown to have caused either pain or bloodshed. In addition to this, if struck, they passed on down the road together, passing Parker's house and the Harris house, and according to the witnesses, deceased was saying nothing out of the way, while she was telling him, "God-damn you, I have done found you out, and I ain't going to have you," and right after the killing said, "That son-of-a-bitch (referring to deceased) worked me hard in Limestone County last fall to help pay his fine." Her conduct on the occasion is not such as to raise the issue of manslaughter, and the evidence would suggest that she had wearied of him and wanted John Maxwell, presenting a strong motive for the crime.

It was shown that the morning after the killing, about 10 o'clock in the morning, appellant had a conversation with Bill Kello, and she complains that the court erred in refusing to permit such conversation and the words and conduct of Maxwell that morning to be introduced in evidence. The record shows that each of them are charged with this offense, and self-serving declarations or acts would not be admissible.

Appellant complains that the court erred in charging the law as to who are principals in the commission of an offense. This being a case depending wholly on circumstantial evidence, the words, acts and conduct of appellant and Maxwell just prior and just subsequent to the killing authorized the court to so charge. The complaint is that the State introduced no evidence connecting Maxwell with the offense. The law is, the case must be submitted as made by the whole testimony, and the court instructed the jury that if Maxwell killed him, and did so, believing that deceased was making or about to make an attack on her, appellant, with a knife, they would acquit her, and also instructed the jury that if Maxwell did the killing and appellant, though present, did not aid him by acts or words, or they had a reasonable doubt thereof they would acquit her. This presented every theory raised by her testimony. The court fully charged the law applicable to a case of circumstantial evidence in language frequently approved by this court.

The testimony of Haley Maxwell, heard on the motion for new trial, does not support the allegations in the motion for new trial.

On the contrary, the evidence would disprove the allegations, and if a new trial had been granted, the evidence of John Maxwell would not be available to her on another trial.

There being no error presented in the record, the judgment is affirmed.

*Affirmed.*